[No. 7160.   Decided March 19, 1908.]

LORENZ FLORIN, *Appellant*, v. JACOB FLORIN, *Respondent*.[1]

CANCELLATION OF INSTRUMENTS—UNDUE INFLUENCE AND INCOMPETENCY—EVIDENCE—SUFFICIENCY. The evidence is sufficient to sustain findings and a decree refusing to cancel a deed from a father to a son on the ground of undue influence and incompetency, where it appears that the grantor, who was over eighty years of age, had trouble with his wife and stepdaughter and feared they would obtain the property conveyed, that he had given considerable to another son, and still retained considerable property, that he had stated that he intended to deed the property to his son and afterwards expressed satisfaction therewith, and the charges as to misrepresentation, undue influence and incompetency were overcome by the evidence.

Appeal from a judgment of the superior court for Lincoln county, Warren, J., entered September 21, 1907, upon findings in favor of the defendant, after a trial on the merits before the court without a jury, in an action for the cancellation of a deed.   Affirmed.

*Merritt, Hibschman, Oswald & Merritt*, for appellant.
*Warren W. Tolman* and *John W. Murdoch*, for respondent.

ROOT, J.—Plaintiff brought this action to set aside a deed conveying certain real estate to the defendant, who is one of his sons. From a judgment in favor of defendant, the plaintiff appeals.

The appellant is eighty-two years old. He came to Washington in 1882, bringing with him his wife, two sons John and Dave, a stepdaughter Mary Helstead, and his brother-in-law. His son George is the eldest, and lives in Wisconsin or Minnesota. Respondent, who is commonly called and known as "Jake," is thirty-five years old, having been thirteen when appellant came to Washington. The mother of Dave, John, and Jake died when Jake was nine months old, and Jake lived

[1]Reported in 94 Pac. 658.

thereafter, until he was married in 1907, with Jake Wald. At the time appellant came west, his son John went to respondent and asked him to come west with them, but he refused to come. The Walds said they could not spare him; that appellant could not get him. Appellant came first to Cheney, and then went to Medical Lake. He had about $400, with which he bought a house and two lots. He continued to reside at Medical Lake during that summer, when he traded his house and lots for a relinquishment of a homestead right. That homestead is being occupied by the stepmother and her daughter Mary, to whom it has been conveyed. The two sons Dave and John worked away from home, earned the living for the family, and Dave took charge of the business affairs. They put about $1,500 improvements on the homestead. Dave died in 1904, seized of the property in suit, of the value of $20,000. He left appellant as his sole heir.

About the time of Dave's death, appellant and his wife and stepdaughter began having trouble about his property. The fear that his wife and stepdaughter would get the property which he acquired as heir of his son Dave, caused him much worry. Jake had never been in Washington; nor had he aided Dave and John in caring for appellant. Soon after Dave's death he came to Washington. After remaining here about fourteen months, he returned to Wisconsin, in February, 1906, taking his father with him. Appellant talked to Jake on the way going to Wisconsin and, in Jake's language, "lots of times" while there about the fear that the stepmother and stepdaughter would get a share of this property. Jake wrote a letter for his father to the bank in Davenport, and procured the deeds containing a description of the real estate. Appellant claims that, while appellant and respondent were driving alone, respondent suggested to his father that he had better deed the land to him (Jake) and save trouble, and that he promised to keep the deed and not record it as long as appellant lived; and after appellant's death he would divide the land with his brother; and that if he married a satisfactory

wife, he would return to Washington with his father. Respondent denies that he first suggested making the deed, but claims that it was suggested by his father. He also denies that he promised not to record the deed. The deed was executed, and a few days thereafter defendant sent it to Davenport, the county seat of the county in which the real estate is situated, to be recorded. Plaintiff scolded his son for recording the deed when he ascertained that he had done so. No money was paid by respondent in consideration of the conveyance.

It is contended by appellant that the respondent induced him to make this conveyance by means of undue influence and importunities, and by taking advantage of his old age and infirmities and of the confidential relations that existed between them as father and son, and by working upon the fears that appellant had of difficulty with his wife and daughter-in-law. It is also urged that respondent failed to carry out his part of the agreement to the effect that he should come to the state of Washington to live. It does not appear that the respondent made any misrepresentations to the appellant, nor does it appear that his relations with the father were as intimate as were those of one of his other sons, who appears to have been his father's business adviser. Some time prior to the conveyance the appellant directed respondent to write to Washington for the deeds to the property. Respondent testified that his father spoke to him on three previous occasions about the matter, and told him he intended to make this deed. Appellant denies that the matter was ever discussed until the day before the deed was made. Several witnesses testified to statements of the appellant to the effect that he was going to give this land to respondent. One of the other sons of appellant appears to have been mentally unsound and incapable of holding property or transacting business, and the only other son had received considerable consideration from the father in the way of loans, and the appellant still retained considerable property in his own name and right. There was evidence to

the effect that, after the deed was executed and recorded, appellant expressed to different persons his satisfaction with having conveyed the property to respondent. About a year after the deed was made, respondent was married. Appellant contemplated securing a divorce from his wife, and consulted an attorney with reference thereto. Some of the evidence goes to show that he thought a divorce necessary in order to clear the title to the property which he had conveyed to respondent. But upon being advised that this was not necessary, he directed his attorney not to proceed with the divorce action.

It is urged that the appellant, by reason of his old age and infirmities, was mentally incompetent to execute this deed. In support of this contention, certain witnesses on the part of appellant gave evidence as to his weakness and infirmities; and against the contention, numerous others, on the part of respondent, gave evidence touching such matters. The appellant was himself a witness in the case. The trial court reached the conclusion that the appellant was competent to execute the deed, and that there was nothing in the transaction sufficient to justify setting the deed aside. We think appellant's incompetency was not established. Taking the evidence as a whole, we think all the charges of undue influence, importunity, misrepresentation, and misuse of confidential and fiduciary relationship on the part of respondent are overcome, and that the evidence does not present facts that would justify the court in setting aside the deed.

The judgment of the superior court is therefore, affirmed.

HADLEY, C. J., FULLERTON, CROW, and MOUNT, JJ., concur.