[No. 9154.   Department Two.   December 7, 1910.]

JACOB MURKOWSKI, *Respondent*, v. LOUIS MURKOWSKI *et al.*, *Appellants.*[1]

CANCELLATION OF INSTRUMENTS—DEED—FAILURE OF CONSIDERATION —BREACH OF CONTRACT—COLLATERAL.   A deed made without fraud, while the grantor was under no disability or infirmity, in consideration of a collateral contract which was in no sense an integral part of the deed, is not to be cancelled for breach of the contract; since enforcement of the contract should be sought at law.

SAME— DEED — CONSIDERATION—COLLATERAL  CONTRACT—MISTAKE. Where a deed of a half interest in a blacksmith shop passed between father and son in consideration of a collateral contract for the payment to the grantor of six dollars per week, and the minds of the parties did not meet, one understanding that the money was to be paid for life, and the other only while the grantor worked in the shop, the deed and whole transaction should be set aside.

Appeal from a judgment of the superior court for King county, Kauffman, J., entered June 22, 1910, in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action to cancel a deed for fraud.   Modified.

*Faben & Kelleran,* for appellants.

*Aust & Terhune,* for respondent.

CHADWICK, J.—In July, 1898, plaintiff and defendant Louis Murkowski, who will be hereafter referred to as the defendant, operated a blacksmith shop at Enumclaw, King county.   Whether they were partners as asserted by plaintiff, or plaintiff was employed by the defendant upon a division of the earnings, is uncertain.   About the time their relations began, plaintiff advanced the amount due upon a contract to purchase the three lots which were occupied by the blacksmith shop, and they became equal owners of the land.   In the fall of 1907, plaintiff and his wife, the step-mother of defendant, had some trouble over property, plain-

[1]Reported in 112 Pac. 92.

tiff asserting his rights by an action at law or in equity. His wife retaliated by bringing an action for divorce, which was granted. The blacksmith shop—that is, an undivided one-half interest—was decreed to be the property of the plaintiff in his sole and separate right. Thereafter and, as we think the evidence fairly shows, by the mutual understanding and consent of both plaintiff and defendant, and with no contemplated fraud or advantage of the one over the other, but with the intent to defeat any possible chance of the wife and her children by a former marriage sharing in the property set over to plaintiff by the decree, the parties caused a deed, absolute in form, to be prepared, which plaintiff executed, conveying the fee simple title unconditionally to defendant. At the same time a contract in writing was entered into, whereby the defendant, as party of the first part, agreed that he would "pay to the party of the second part the sum of six dollars per week as long as he may live; provided, however, that if the party of the first part should sell his blacksmith shop, then he agrees to pay to the party of the second part the sum of $1,000, and the payment of six dollars per week shall then cease;" and the plaintiff, as party of the second part, agreed to "work for the party of the first part in his blacksmith shop, as long as he is able to perform such work."

On January 18, 1908, plaintiff remarried his divorced wife. From the time the deed and contract were executed, the parties acted thereunder until the summer of 1909, when plaintiff, his wife having in the meantime been informed of the transaction, quit working for defendant, asserting his sickness and inability to work, but demanding the six dollars per week as provided in the contract. Defendant denied his liability unless plaintiff actually worked for him, and in addition thereto asserted plaintiff's health and ability to work. In the due progress of the family row, plaintiff brought this action to set aside the deed as fraudulent. Defendant, answering, denied the alleged fraud, and set up a breach of the contract. The trial judge made no findings of fact, but decreed

that the deed be cancelled as fraudulent; conditioned, however, upon the payment of the sum of $350 by plaintiff into the registry of the court for the use of the defendant.    The testimony revealed the fact that defendant had advanced that sum for the benefit of plaintiff in the divorce suit, and the possibility that it was a part of the consideration for the deed. Defendants have appealed.

It is contended by the appellant, and we think correctly, that there was no evidence sufficient to warrant the court in setting aside the deed as a fraud upon respondent.    He executed it, knowing its effect, and with full intent to divest himself of the title.    He was under no disability or infirmity of mind or body.    He made the deed in consideration of the contract, which was collateral and in no sense an integral part of the deed.    We think that, where a deed is so made, the remedy is not in equity to cancel the deed, but the enforcement of the consideration must be sought at law.    *Ford v. Jones*, 22 Wash. 111, 60 Pac. 48; *Goodrich v. Kimble*, 49 Wash. 516, 95 Pac. 1084; *Florin v. Florin*, 49 Wash. 37, 94 Pac. 658; *Balam v. Rouleau*, 52 Wash. 389, 100 Pac. 833; *McClellan v. O'Conner*, 47 Wash. 121, 91 Pac. 562.

At this point, however, we are met by a fact which seems to us to be evident from a careful reading of the testimony. The minds of the parties did not meet on the effect of the collateral agreement.    They made their contract in the Polish language.    Respondent speaks English brokenly, while the appellant seems to suffer some impediment of speech.    Having made their contract in their own tongue, it was reduced to writing by a scrivener.    Appellant believed, and acted upon the belief, that the six dollars a week was to be paid only in the event of labor performed and services rendered by the respondent; whereas respondent believed at the time the contract was executed, that he was to receive the sum of six dollars a week as long as he lived.    Both parties seem honest in their belief, and we do not think either of them would have entered into the contract if he had not so understood it.    The

whole transaction, deed and contract, may be set aside for this reason, reserving a lien in the sum of $350 on the one-half interest in the property in favor of the appellant.

However, considering the general equities of the case, and the expressed willingness of the respondent to accept the sum of $1,000 if the property had been sold to a third party, and his declaration when a witness in his own behalf that he is willing to take $1,000 in settlement of his claim, we think appellant, who is the owner of an established business upon, as well as an undivided half interest in, the property, should be allowed to retain it if he so desires. Therefore, if, within sixty days after the remittitur goes down, the respondent shall pay into the registry of the court the sum of $1,000, subject to the order of respondent, the title of the property will be confirmed in him. Otherwise, the decree will be modified in that the deed is set aside, but subjecting the property to a lien in favor of appellant in the sum of $350, and providing for its enforcement.

We see no reason, except that the parties are of the same blood and possibly urged on by others who have married into the family, why this controversy should have ever reached the courts, or why either party should pay the costs on appeal.

The case will be remanded, with instructions to enter such a decree as may be necessary to meet these suggestions. Neither party will recover costs in this court.

RUDKIN, C. J., DUNBAR, CROW, and MORRIS, JJ., concur.