[No. 17181. Department One. November 1, 1922.]

RODERIC D. PERRY, as Administrator etc., et al., Respondents, v. WILLIAM WETZEL et al., Appellants.[1]

CANCELLATION OF INSTRUMENTS (5)—FRAUD—UNDUE INFLUENCE—WANT OF CAPACITY—EVIDENCE—SUFFICIENCY. Conveyances of property worth $25,000, in consideration of the payment of $100 a year and support and maintenance, are properly set aside for fraud and undue influence, where it appears that the grantor, a bachelor, 72 years of age, was insane at the time; and that, regardless of his mental competency, the conveyances were obtained by undue influence.

Appeal from a judgment of the superior court for Whatcom county, Alston, J., entered November 4, 1921, upon findings in favor of the plaintiffs, in an action for equitable relief, tried to the court. Affirmed.

*S. M. Bruce, A. C. Durham, J. R. Crites,* and *Edwin Gruber,* for appellants.

*Sather & Livesey,* for respondents.

[1]Reported in 210 Pac. 362.

MITCHELL, J.—This is a suit in equity to cancel conveyances of real and personal property made by Ernst Strache to the defendants, who are appellants here. Ernst Strache was a bachelor, and at the time of his death, February 3, 1921, was seventy-two years of age. He settled on the land involved in this controversy, situated in Whatcom county, in 1874, and continued to reside thereon. His mother lived with him and did his housekeeping for some years until she died in 1910. Thereafter he lived alone, having no company other than occasional visits from his relatives, or a hired man or neighbor going to the place to help with extra work, including harvests. Appellants, living near, kept in close touch with him, frequently working for him, and borrowing money from time to time in advance and in excess of the value of work performed by them. Strache weakened perceptibly, mentally and physically, the last four or five years, until, as the court found, upon an abundance of evidence, he was insane at the time the transaction here involved was had, and continued so thereafter. On one occasion, shortly before his last sickness, for an appreciable time he failed to recognize his brother, well known to him and who had visited him but three months before. He became neglectful of his clothes and personal appearance, while his home surroundings were described as extremely filthy and unsanitary. He suffered an accidental injury in February, 1920, from which he was confined to the bed and house several weeks, during which time he was cared for by the appellants, without any notice whatever by them to his relatives, one of whom had specifically requested appellants to notify them in case of sickness.

When he had recovered sufficiently to be taken to the county seat, the agreements here involved were

entered into, March 17, 1920. The agreements consisted of a contract by which the Wetzels, appellants, should at once take charge of the ranch and all the stock and farm implements thereon and continue to use the same as long as he lived, subject to a forfeiture of their rights if they failed to provide for him, and also a bill of sale of all the personal property and a deed of conveyance of the farm, consisting of one hundred and twenty acres, in consideration of one hundred dollars per year to be paid by the Wetzels, and the further consideration of furnishing him a home on the place, providing him with necessary clothing and medical care during his lifetime, together with funeral expenses upon his death. The contract for the possession of the premises was at that time recorded in a volume known as power of attorney records in the auditor's office of the county, while the bill of sale and deed of conveyance were deposited in a bank in Bellingham to be delivered by it to the Wetzels upon his death. The property covered by the agreement included all he had other than $1,300 cash in a bank, $200 in liberty bonds, and two small pieces of unimproved, unvalued real property. The Wetzels took charge of the property and gave him a home with them until his death on February 3, 1921. It does not appear if they paid him the $100 provided for in the contract. Within a few days after his death, they procured the deed and bill of sale from the bank and had them duly recorded in the office of the county auditor. None of the respondents had any knowledge of the written instruments until after the deed and bill of sale were recorded.

Roderic D. Perry was appointed administrator of the estate and promptly, together with Lebrecht Strache and Marie C. Perry, surviving brother and

sister, and the only heirs at law of the decedent, brought this suit to cancel the deed and bill of sale because of the mental incapacity of the maker, and because of the fraud and undue influence of the grantees. The trial resulted in findings, conclusions and judgment in favor of the plaintiffs, from which the defendants have appealed.

The record overwhelmingly shows, as the trial court found, that the decedent was insane at the time of the transaction. And if it be admitted that the decedent was mentally competent in the sense that he knew what he was doing at the time he executed the instruments in question, that does not meet the present situation. There is still left the charge of undue influence, which is defined in the case of *In re Tresidder's Estate,* 70 Wash. 15, 125 Pac. 1034, to be "such an influence as deprives the party of the free exercise of his intellectual powers, an influence which is exercised by coercion, imposition, or fraud, an influence which impels the testator to act in fear, a desire for peace, or some feeling which he is unable to restrain." And, as was further said in that case in quoting from Wigmore on Evidence, § 2503, "there is no 'uniform rule capable of application apart from the facts of each case.' "

In addition to the facts already mentioned, the trial court found that; on March 17, 1920, the date of the written instruments, the real estate was of the reasonable value of $24,000, and the personal property $1,000; that the reasonable cost of caring for and providing the necessary comforts for the decedent in a manner suitable to his station in life on the farm would not exceed $2 per day, and that the fair market rental value of the farm was $1,000 per year and ample and sufficient to care for him.

Among other findings were the following:

"IV. The court further finds that at all times in the plaintiff's complaint mentioned and on the 17th day of March, 1920, and up to and inclusive of the date of his death, the said Ernst Strache was suffering from certain mental hallucinations and delusions to the effect that his relatives were 'against him' and desired to confine him in an asylum. He also had fixed delusions as to visions and claimed supernatural powers including the power to converse with the spirit of his departed mother, and the court further finds, as an evidence of the state of Ernst Strache's mental condition, that for several years last past preceding the 17th day of March, 1920, he lived in a state of personal neglect and filth both as to his personal dress and to home surroundings. That said mental delusion and hallucination to the effect that his said relatives were 'against him' and wished to place him in an asylum was provoked in the mind of Ernst Strache by the defendants thru conversations and suggestions extending over a period of several years prior to March 17th, 1920, and that same was wrongfully and maliciously done with the intent to procure the property of said Ernst Strache.

"V. That Lebrecht Strache, one of the plaintiffs herein and brother to said deceased, approached William Wetzel, one of the defendants herein, several years prior to said 17th day of March, 1920, and acquainted him with what he then believed to be a mental weakness in his brother in that his brother was being victimized by unscrupulous mining promoters and gave evidence of being an easy prey to any scheme that promised easy financial reward, and in this behalf the court finds that the said Lebrecht Strache did then believe the said William Wetzel a man worthy of confidence who could be trusted to assist in directing his said brother and that he did request the said William Wetzel to assist him in trying to dissuade the said Ernst Strache from foolish mining investments and ventures.

"VI. That for several years prior to the said 17th day of March, 1920, the said Ernst Strache failed rapidly in health and approximately one month prior to said 17th day of March, 1920, he met with an accident that rendered his condition acute and in this behalf the court finds the said Ernst Strache, at said time was highly nervous and emotional, living alone upon his homestead, the same being the property hereinbefore described, and he sent for the said William Wetzel to care for him and his said stock upon said place.

"VII. That thereupon the said William Wetzel came upon the premises of said decedent and shortly thereafter, to wit, on the 17th day of March, 1920, secured the execution of the contract, deed and bill of sale, the same being Exhibits 'C,' 'D' and 'E,' herein, and in this behalf the court finds that defendants as a further inducement, likewise represented to him that they were kindly disposed toward him and would care for him, provided he would make said transfer to them of his said homestead above described and the personal property thereon, which is hereinbefore described. And the court further finds that the mental condition of said Ernst Strache at and for a long time prior to the said 17th day of March, 1920, rendered him peculiarly susceptible to the suggestions of the defendants in this, that he was at said time highly emotional, had at said time the said delusion that his said relatives were at enmity with him and wishing his restraint in an asylum, and the court further finds that because of said condition in the premises, he was willing the defendants have his said property and that he was under all the circumstances easily influenced. That the defendants were at all times well acquainted with the mental weakness of the said Ernst Strache and were personally apprised thereof at the time they attempted to contract with him and they did at and prior to said time seek to stimulate his said prejudices against his said relatives and did unduly influence and overreach him on said date in contracting with reference to his said property.

"IX. The court further finds that the plaintiffs herein are persons of good repute, respectable citizens and were desirous of caring for the decedent prior to his death and had for several years prior thereto entreated with him to leave his said place and go to his sister, Marie C. Perry, to live, and that they did in more recent times entreat him to go to a hospital where he could be cared for and receive medical attention. That their said advances due to the delusion hereinbefore referred to of which he, the said Ernst Strache, was possessed, were refused.

"X. That said deceased, Ernst Strache, did not recover from the physical and mental condition he was in at and prior to the 17th day of March, 1920."

An examination of all the evidence, the voluminous details of which need not be further summarized, convincingly establishes the findings and conclusions of the trial court. The proof came from many witnesses, a number of whom were disinterested. It shows satisfactorily the yielding of a subservient mind. He had no independent advice whatever concerning the transaction, and during the months that followed prior to his demise, upon occasions of short visits by relatives, the appellants studiously avoided leaving them alone. This was not denied by any of the appellants, nor, indeed, did they take the witness stand to deny any of the damaging testimony as to their declarations and conduct given in evidence against them, or at all.

The conveyances in question were executed, in our opinion, under circumstances that fully justify the interference of equity for their cancellation.

Judgment affirmed.

PARKER, C. J., FULLERTON, TOLMAN, and BRIDGES, JJ., concur.