[No. 15433. Department Two. January 12, 1920.]

Ed H. Parr, *Executor etc., Appellant,* v.
Dora M. Campbell *et al., Respondents.*[1]

DEEDS (21-1, 63)—VALIDITY—MENTAL CAPACITY—EVIDENCE—SUF-
FICIENCY. A finding of mental capacity on the part of a woman
aged eighty to execute a deed to her daughter, with whom she had
made her home for years, is sustained, although relatives testified
she was childish, where disinterested witnesses testified to facts
showing more than ordinary mental capacity for one of her age.

SAME (21-1, 63)—VALIDITY—UNDUE INFLUENCE—EVIDENCE—SUF-
FICIENCY. A finding that a woman eighty years of age was not un-
duly influenced by her daughter with whom she had resided for
years, to execute a deed to her, is sustained by evidence of her sense
of obligation to her daughter and repeated expressions of her intent
to compensate her; it not being undue influence for a daughter to
persuade or solicit her mother to make a conveyance, so long as
she was not overborne or rendered incapable of acting upon her
own motives.

Appeal from a judgment of the superior court for
Grays Harbor county, Abel, J., entered December 14,
1918, in favor of the defendants, in an action to set
aside a deed, tried to the court. Affirmed.

*Morgan & Brewer* and *Chas. W. Smith,* for appellant.
*Wm. E. Campbell,* for respondents.

FULLERTON, J.—On July 26, 1915, Mary J. Counts
executed and delivered to her daughter, Dora M.
Campbell, a deed to certain real property situated in
the city of Hoquiam. She died in the state of Cali-
fornia on December 25 of the same year. Ed H. Parr,
her son, was named in her will as executor thereof, and
duly qualified as such. After his qualification as exec-
utor, Parr began the present action against Mrs.
Campbell and her husband and one Amelia F. Felzer

[1] Reported in 186 Pac. 858.

to set aside the deed, averring in his complaint that Mrs. Counts, at the time of its execution, was greatly enfeebled in mind and body, incompetent to manage her own affairs, and was induced to execute the deed by the exercise of undue influence and the unlawful exercise of the art of persuasion on the part of Mrs. Campbell and her husband, and that the deed was executed without consideration; averring further that Amelia F. Felzer claimed some interest in the property.

Mrs. Campbell and her husband answered by a general denial. The other defendant answered to the effect that she had no knowledge of the matters and things set forth in the complaint, and that she had, without such knowledge, taken a mortgage upon the property to secure a loan made by her to the Campbells, praying a foreclosure of her mortgage. The cause was tried to the court as one of equitable cognizance, and resulted in a decree sustaining the conveyance and foreclosing the mortgage. The executor appeals.

The only questions we have found it necessary to discuss are two, namely: first, was Mrs. Counts, at the time of making the conveyance, mentally incompetent; and second, was she induced to make the conveyance because of undue influence exercised over her by the grantee and her husband. The evidence discloses that Mrs. Counts purchased the property in question from one of her sons in the year 1912, paying the purchase price in cash. She took possession of the property and lived there for a time with the daughter to whom she afterwards conveyed it, the daughter then being unmarried. The date of the daughter's marriage is not shown, nor is it shown whether the daughter left the home after her marriage, although it is stated by one of the witnesses that she returned with her husband to her mother's residence in 1913

and lived with her until after the execution of the conveyance. At the time of the conveyance, Mrs. Counts was upwards of eighty years of age. In the month of January preceding that time, she fell and fractured a bone in her leg. While convalescing from the injury she had an attack of pneumonia, and while the fever was highest showed some delirium. After she recovered from this illness, she again fell and injured her shoulder, and at the time of the execution of the deed was unable to walk, except perhaps to a limited extent with crutches, and was usually taken about in a wheeled chair. After the execution of the deed, she went to California to the home of another daughter, where she died, as before stated.

The evidence of her incapacity consists of the statements of her immediate family to that effect, and to the effect that she was exceedingly childish. No specific instances of mental aberration or excessive childishness are pointed out, nor are any instances recited where she talked irrationally. The statements are general and voice only the opinion of the witnesses derived from her general acts and conduct, the principal act being, as we are inclined to believe, the execution of the deed to this particular daughter. Even one of these, who saw her in California a few months prior to her death, testifies that while she was childish, she was then in her right mind and competent to make a deed to real estate.

The evidence of the unrelated witnesses is all to the effect that she was not different mentally from the ordinary woman of her age. The witnesses were the pastor of her church, who made it a part of his duty to frequently call upon her, the physician who attended her in her illness, a banker to whom she had intrusted the business of loaning her money, and the notary who took her acknowledgment to the deed. They testify

to facts which show her not only to possess ordinary mental capacity, but capacity, it seems to us, unusual in one of her extreme age.

Nor did she execute the deed upon a sudden impulse or without thought or deliberation. On the contrary, she mentioned the matter to her pastor on one of his visits, in which she spoke tenderly of her daughter's conduct, mentioning the care she was to the daughter, her sense of obligation to her and her desire to do something for her. The pastor testifies that he was not visiting her for the purpose of discussing her business affairs, and passed the matter over by telling her that whatever she thought was right would no doubt be the proper thing for her to do. He says he did, however, discourse with her on religious and general subjects, and as to those she manifested no mental weakness whatsoever. A few days before the execution of the deed, she called in her son, the appellant in this proceeding, and made known to him her intention to execute the deed. He undertook to dissuade her from such a course, and testifies that, when he left her, he had her promise that she would not execute the deed. The notary who took the acknowledgment to the deed testifies that he prepared the deed at the request of the grantee's husband, and at his request went to the grantor's home with him to have it executed; that he found the grantor sitting in a chair apparently suffering from some physical injury, although mentally bright; that he had quite a conversation with her, in which she expressed to him her sense of obligation to her daughter and her desire to do something for her, and that she executed the deed after he had fully explained to her its purposes and legal effect. Mrs. Counts at this time owned another house and lot in the city of Aberdeen which she was renting. The house was out of repair in such a way

as to affect its rental value. As a part consideration for the deed to her daughter, she required her son-in-law to put the house in repair. Seemingly, if she was so far mentally incompetent as not to know the effect of her act of executing the deed, she would have been so far mentally incompetent as not to have been capable of bearing in mind the condition of this house.

Aside, therefore, from her extreme age and her bodily infirmities, there is little in the record to indicate mental incompetency. While these are evidentiary facts, they are not in themselves conclusive, and we think their effect is overcome in this instance by the positive proofs. It is perhaps unnecessary to add that natural love and affection between mother and daughter is a sufficient consideration to sustain a conveyance. We conclude, therefore, that the trial judge did not err in holding that the grantor had sufficient mental capacity to execute the deed.

The contention that the deed was the result of undue influence on the part of the grantee and her husband, we think is likewise without foundation. The evidence in support of the fact consists also of the statements of her immediate family. The executor testifies that, in the conversation with her, heretofore referred to, she stated to him that the daughter and her husband requested the deed, but even he states the fact in the alternative, his language being: "She (the mother) said that Mr. and Mrs. Campbell wanted her to deed them that place and I asked her for what reason. She said they had taken care of her and thought they should have it. She had no money left and wanted to deed this place to them, or they wanted her to deed it to them." The daughter in California at whose home she died, and another daughter, who visited her while at that home, testify to declarations of the mother to the effect that she had deeded the property because

of the importunities of, and because of her fear of, Mrs. Campbell. They do not purport to give her exact words, but give the substance of the declarations only, and these do not show the nature of the importunities, further than that Mrs. Campbell had scolded because she hesitated to execute the deed. Their evidence was taken by deposition, and it is a significant fact that even these show that they had no very kindly feeling toward the sister who had obtained the property. Much is made of the fact, also, that Mrs. Counts left for California shortly after executing the deed. It is said that the Campbells "induced" her to go. But we find nothing to support this assertion. On the contrary, the evidence of the daughter at whose home she was at the time of her death indicates that she went of her own free will. Another says that she was only visiting, and "was anxious to go home."

Opposed to this evidence is the declarations heretofore referred to, made by the grantor to the pastor of her church and to the notary who took the acknowledgment of the deed. These, in our opinion, more naturally express her true state of mind. This was the daughter who had always remained in her household. Common observation teaches us that a woman of her advanced age, for many years preceding her death, would have required much watchful care and attention, and that, subsequent to her injury, this care and attention would have been almost constant. Mrs. Campbell had furnished her with this, and it is not unnatural that she should have felt that it deserved reward. Nor is it undue influence for a daughter to persuade or solicit her mother to award her a greater part of her estate than is awarded to other members of the family. Influence becomes undue only when it overcomes the will of the grantor; when the grantor acts under such coercion that his own free agency is

destroyed.   The grantor's views may be radically changed by the influence exercised, but so long as he is not overborne and rendered incapable of acting upon his own motives, his acts are his own acts, not those of another.   The evidence here is, to our minds, far from convincing that the grantor acted otherwise than of her own free will.

The judgment is affirmed.

HOLCOMB, C. J., TOLMAN, MOUNT, and BRIDGES, JJ., concur.