[No. 18942.  Department One.  March 6, 1925.]

*In the Matter of the Estate of* ARTHUR B. CHAPMAN,
*Deceased.*

JOHN CHAPMAN *et al., Appellants,* v. H. W. CHAPMAN,
*as Executor, et al., Respondents.*[1]

WILLS (20)—VALIDITY— UNDUE INFLUENCE — EVIDENCE — SUFFICI-
ENCY.  In a will contest, findings that there was no undue influence
are sustained, where it appears that the beneficiary, with whom the
testator visited a few days before his death, took the testator to a
lawyer without knowing that his purpose was to make a will, and
had never discussed the subject with him, and that the contestants
had visited the testator shortly before his death when alleged mis-
understandings were undoubtedly straightened out.

SAME (51)—CONTEST—ATTORNEY'S FEES.  Where a will contest is
instituted in good faith, and a prima facie case is made, it is error
to tax an attorney's fee against the contestants upon sustaining the
will, under Rem. Comp. Stat., § 1389, authorizing a reasonable at-
torney's fee in the discretion of the court.

Appeal from a judgment of the superior court for
King county, John S. Jurey, judge *pro tempore,* en-
tered April 24, 1924, dismissing a will contest, after a
trial to the court.  Modified.

*Marion A. Butler,* for appellants.

*J. M. Hawthorne,* for respondents.

BRIDGES, J.—This is a will contest.  The testator,
Arthur Chapman, died October 5, 1923, leaving a will
dated September 27th of the same year.  He was un-
married and lived in Seattle.  During several years
immediately preceding his death, he had been in poor
health, and as a consequence somewhat peevish, irri-
table and sensitive.  He left surviving him four bro-
thers, to wit: John Chapman, George Chapman, Neil
Chapman and H. W. Chapman, and one sister, Isabel

[1]Reported in 233 Pac. 657.

Chapman Canton.   The brothers all lived in the state of Washington, the sister in Canada.   Sometime in 1921 the deceased made a will, making his sister the sole beneficiary and appointing her executrix.   In June, 1922, he made a second will, giving his sister all of his property, but making his brother George executor. Shortly after making this will, he notified his sister of the will in her favor and that he had placed it in his deposit box in the vault of a Seattle bank, and enclosed her an identification card for her signature to be left with the safety deposit clerk.   About a year thereafter, he made a third will in which he gave to his brother George about seventy per cent of his property and the remainder to his sister and named George as executor. He then notified George (who lived in Skagit county) to come to Seattle for the purpose of being introduced to the clerk of the vault where his will was kept.   At that time there were some tentative arrangements that Arthur would make a somewhat extended visit to the home of his brother George.   For some reason, not definitely shown, this visit was never made.   Some six or eight days before he died, he made the will which has been probated.   It gave his brother Wesley (H. W. Chapman) all his estate, except a few hundred dollars given to the sister and the other brothers.   It made Wesley the executor.

Feeling that his health would improve if he could get out of Seattle and away from his business, on September 18, 1923, (a few days before the last will was made) he went to visit his brother Wesley and family.   Shortly after his arrival there, it was suggested that Mrs. Chapman write to the other brothers advising them that Arthur was visiting her and he would like to see them.   Two or three days thereafter, George wrote a letter to Wesley's family, asking them to pay a visit to his home.   Mrs. Chapman read this letter to the

testator. It did not make any reference to him nor ask him to make the visit with the rest of the family. For some reason it appears that the letter written, or supposed to have been written, advising the brothers of the testator's presence at Wesley's home was not written, or if written, was not received by George. Very soon thereafter Mrs. Chapman wrote a letter to George, and probably to the other brothers also, advising them that the testator was visiting at her home and of his serious sickness. The brothers all visited Arthur several days before his death. Some five or six days before he died, he requested his brother Wesley to take him to Seattle, where he desired to transact some business. This was done. While in Seattle Arthur requested Wesley to take him to an attorney's office with whom he desired to transact some business. This request was complied with. The brother at that time did not know the purpose of the visit, but it was at this time that the will which has been probated was made. When Wesley came to get Arthur, the attorney told him that the will had been made and that he would be the executor, but was not told the other contents of the will.

The contest is based on mental incompetency of the testator and coercion and undue influence on the part of Wesley Chapman and his wife. The lower court upheld the will and dismissed the contest.

There is very little testimony to indicate that the testator, at the time he made his last will, was not mentally competent. Indeed, the contrary is so clearly shown that this ground of the contest has been substantially abandoned in this court.

We have read the testimony very carefully and are well satisfied that it fully supports the conclusion reached by the trial court on the questions of coercion and undue influence. The appellants' case is rested on some suspicious circumstances, but these are explained

in a satisfactory manner by Wesley and his wife. They testified, and there is no affirmative testimony to dispute them, that at no time did they talk with the testator about his property or about making a will, nor did he mention such matters. Neither is there any direct testimony tending to show that they sought to turn the testator against his other brothers and his sister. The trial court seems to have been well satisfied that they told the truth, and we see no reason to think to the contrary.

It is strongly urged that Mrs. Chapman deliberately failed to write to the brothers advising them of the testator's visit with her and purposely read George's letter to the testator, intending to lead him to believe that he had been intentionally slighted by his brother George. The testimony shows that the testator interpreted the absence of reference to him in George's letter as indicating that the previous letter had not been received. There is nothing but the circumstance itself to indicate that the testator was thereby influenced to change his will. The testimony shows that he paid no attention to it. All the brothers, at the invitation of Wesley, saw Arthur and visited with him several days before he died, and we must assume that, if there was any misunderstanding, it was removed.

But no useful purpose could be served by a further discussion of the details of the testimony. It is perfectly plain to us that it fails to show that any undue influence or coercion was used by Wesley or his family in connection with the will.

The judgment imposed the costs of the litigation and $100 attorney's fee on the contestants, and of this they complain. Having failed in their suit, the court did not abuse its discretion by imposing the costs upon them, but the attorney's fee stands upon a different principle.

The probate code provides that "If the will be sustained, the court may assess the costs against the contestant, which costs may in the discretion of the court include a reasonable attorney's fee." Laws of 1917, p. 648, § 19 [Rem. Comp. Stat., § 1389]. In the case of *Preuss v. Berg*, 102 Wash. 497, 173 Pac. 435, we held that, where a person in good faith brings an action to contest a will and makes a *prima facie* case, attorney's fees should not be awarded against him in the event his action fails. That the contestants brought this action in good faith and in the firm belief that undue influence had been used in the making of the final will, we have no doubt. It was doubtless the legislative intent that, if the contest of the will was instituted in good faith and under a fair degree of discretion concerning the facts, attorney's fees ought not to be imposed. It is our opinion that the imposition of the attorney's fee in this case was erroneous.

The judgment of the trial court is modified to the extent of eliminating therefrom the attorney's fee allowed against contestants and it is otherwise affirmed. Neither party to this action will recover costs in this court.

TOLMAN, C. J., PARKER, ASKREN, and MAIN, JJ., concur.