[No. 19116.  Department One.  May 12, 1925.]

LESTER I. BARBEE *et al., Appellants,* v. W. H. BARBEE
*et al., Respondents.*[1]

WILLS (4, 12)—TESTAMENTARY CAPACITY—UNDUE INFLUENCE—
EVIDENCE—SUFFICIENCY. Want of testamentary capacity to make a
will and undue influence is not sufficiently shown, where it appears
that the testatrix was of sound mind and capacity, and the only
undue influence was a suggestion to the testatrix that children with
whom she was not on good terms should receive nothing.

SAME (12)—FRAUD—UNDUE INFLUENCE—EVIDENCE—SUFFICIENCY.
A finding that a will was not induced by fraudulent representations
is sustained by proof that the only rumors thereof were started by
the contestants.

SAME (54)—CONTESTS—COUNSEL FEES—POWER TO ALLOW. An
allowance against contestants of a will of $2,000 for attorney's fees
is reasonable, where the estate was valued at $37,000, and testi-
mony was taken for a period of eight days, making a statement of
facts of 690 pages.

Appeal from a judgment of the superior court for
Yakima county, Nichoson, J., entered May 20, 1924,
dismissing a will contest, for insufficiency of the evi-
dence to make a *prima facie* case.  Affirmed.

*H. J. Snively,* for appellants.

*Rigg & Venables, Nat U. Brown,* and *Bonsted & Ivy,*
for respondents.

ASKREN, J.—This action to set aside the will of Mary
E. Barbee was brought by seven of her children, who
received certain keepsakes as well as legacies of fifty
dollars each, while ten thousand dollars was be-
queathed for a memorial chapel, and the balance di-
vided between three remaining children.  The ground
upon which it was sought to be set aside was that the
testatrix was not of testamentary capacity, and that

[1]Reported in 235 Pac. 945.

the execution of the will was procured by undue influence and by fraud. At the close of petitioners' testimony, the court held that a *prima facie* case had not been made under the evidence, dismissed the petition, and allowed attorney's fees against the contestants in the sum of $2,000. They appeal.

The assignments of error are, first, that the court erred in dismissing the petition; and secondly, in allowing attorney's fees.

The evidence upon behalf of petitioners took a very wide range and covered so many different phases that it is impossible to set them all out in this opinion, and confine the decision to proper length. Therefore we confine ourselves to the following salient facts:

Mary E. Barbee was the widow of Daniel Barbee, who had died a number of years prior to the making of the will in question. She was the mother of ten children who are interested in this will. She lived on a ranch near Yakima, and had, as her trusted servant, a colored man, George Denton. She was a very religious woman, being described by her pastor as "a good Christian woman who believed in a personal God and hell fire for sins committed in this life, and in the final judgment after death."

Shortly after her husband's death, she made a will supposed to provide for an equal division of her property among her children, but later destroyed it. In discussing the matter, she told the children the property should be divided equally. In 1915, she had some trouble with her son Lester I. Barbee, one of the petitioners, over the sale of some apples. One of her children, Dolly Calhoun, with her husband came from Arizona to visit the testatrix at her request, but later left because of trouble with her and a brother, Wiley Barbee. There arose differences of opinion between sev-

eral of the petitioners and the testatrix over the continued employment of Denton. Some of the children resented his apparent standing in the home, and the fact that he was permitted to use the same bath tub as other members of the family. Rumors developed in the neighborhood which caused Denton to believe that a movement was on foot to lynch him or drive him out of the country, and feeling that Lester Barbee and some of the other petitioners were interested in the matter, he was somewhat bitter towards them. There were also suggestions of improper conduct between the testatrix and Denton, although none of the sons or daughters when accused would admit that any such statements were made by them. The daughter Dolly and her husband, who was an evangelist, spent a portion of 1919 and 1920 at the mother's home, and the evidence discloses that there was a desire upon their part that the testatrix should discharge Denton and let them take his place. She finally decided to keep Denton and let her daughter and son-in-law go. Afterwards there was a conference at the home of the testatrix attended by a number of the petitioners in which the testatrix was taken severely to task for retaining Denton and compelling her daughter to go elsewhere at a time when she and her husband were in financial straits.

During all this time, Denton and the son Wiley frequently referred to the fact that Wiley was the only one of the children who stood by the testatrix, and that the other children had turned against her and were not entitled to anything. The testimony showed that some of the petitioners came to see the mother after the trouble became serious and talked with her, but they claim there was always a coldness manifested towards them when Denton or Wiley were in the room. The

testimony is very clear, however, that there was considerable feeling between all of the petitioners and the testatrix, and at the time she made her will, which was but a few days before her death, she felt that their conduct towards her had not been proper; although she still retained her mother love for them.

The testatrix was confined to her bed practically all the time for several months prior to her death, and at the time of making her will was very weak. There is abundant evidence, however, to show that she was of sound mind and of testamentary capacity at the time she made it. She not only named the persons who were to inherit and the amounts they were to receive, but she disposed of keepsakes, as well as a horse, buggy, harness, and even a dog. She also made a bequest of ten thousand dollars for a memorial funeral chapel to be placed in the cemetery at Zillah, which was to be named in her honor, saying that she had seen funerals held in all sorts of weather and desired a proper place for them. Nowhere in the record can the slightest evidence be found to indicate a want of testamentary capacity.

The undue influence suggested by the evidence goes no farther than what may be presumed to follow from the statements of Denton and Wiley Barbee to the effect that the children with whom the mother was not on good terms should receive nothing. This is not undue influence. Anyone may suggest to a testatrix as to the proper disposition of her estate. *Parr v. Campbell,* 109 Wash. 376, 186 Pac. 858; *Roe v. Duty,* 115 Wash. 313, 197 Pac. 47. The undue influence which the law regards as sufficient to set aside a will must be such as to cause the testatrix to make a will other and different from the will the testatrix really desires to make, or, as it has sometimes been stated, ''It is the will of the per-

son who exerted the influence, and not the will of the testatrix." *In re Murphy's Estate,* 98 Wash. 548, 168 Pac. 175.

The evidence as to fraud is likewise lacking. Appellants claim that the fraud finds its basis in the evidence that Lester Barbee and Arthur Barbee represented to the testatrix that the other children were accusing her of immoral conduct with Denton, and that they interfered with her freedom of action; but whether these rumors were started by Lester Barbee and Arthur Barbee, and whether they made such statements or not to the testatrix, the evidence shows that the mother had ample opportunity to take up with the others these questions, and that they were discussed at her home. The trial court found that the statements and rumors were not started by Lester or Arthur Barbee but were circulated by some of the petitioners. A careful reading of the testimony does not preponderate against this conclusion. Under the evidence, the court was justified in holding that petitioners had not made out a case.

The next question to be determined is whether the court erred in making the allowance of attorney's fees against the contestants.

· The authority for the allowance of attorney's fees is contained in § 1389, Rem. Comp. Stat. [P. C. § 10020a], as follows:

"If the probate be revoked or the will annulled assessment of costs shall be in the discretion of the court. If the·will be sustained, the court may assess the costs against the contestant which costs may in the discretion of the court include a reasonable attorney's fee."

The court in its memorandum opinion found that a *prima facie* case had not been made. The evidence we have recited discloses that the petitioners knew, at the

time they brought the action, that the testatrix was displeased with them, and they had every reason to believe any will which she might make would not provide for her children equally. They not only knew of the ill feeling, but what caused it, and the part each had played therein, for they had discussed the matter with their mother. Under these circumstances, they were not justified in bringing this contest. No estate ought to be subjected to the expense of defending contests which can not muster sufficient evidence to make a *prima facie* case. Our previous holdings are that attorney's fees will not be allowed against a petitioner if the contestant makes a *prima facie* showing of probable cause (*In re Eichler's Estate,* 102 Wash. 497, 173 Pac. 435), that it is wholly a matter within the discretion of the trial court (*In re Geissler's Estate,* 110 Wash. 14, 187 Pac. 711); that they will not be allowed if the contestant is justified in bringing the action (*In re Hille's Estate,* 117 Wash. 205, 200 Pac. 1034); or, if brought in good faith and in a firm belief that undue influence was used in the making of the final will (*In re Chapman's Estate,* 133 Wash. 318, 233 Pac. 657).

It follows, therefore, that when a contestant does not make a *prima facie* case and merely offers evidence which the trial court is justified in holding, as a matter of law, does not require any proof to combat it, attorney's fees should be charged against the contestant.

Appellants also assign as error that the amount allowed as attorney's fees was unreasonable. This point has not been briefed, nor was it urged on oral argument. The evidence shows the estate is valued at approximately $37,000, against which claims have been allowed in an amount less than $2,000. The statement of facts discloses 690 pages of testimony taken at the trial, which covered a period of some eight days. The case was ably tried by skilled counsel on both sides, and

we have no doubt that the court properly exercised its discretion in placing the attorney's fee in the amount that it did.

The judgment is affirmed.

TOLMAN, C. J., BRIDGES, MAIN, and PARKER, JJ., concur.