[No. 25259. Department Two. December 18, 1934.]

KATE E. TREADWELL, *as Executrix, et al., Respondents,* v. HENRY A. TREADWELL *et al., Appellants.*[1]

*F. W. Moore* and *Tucker & Tucker,* for appellants. *Karr & Gregory,* for respondent.

[1] Reported in 38 P. (2d) 375.

HOLCOMB, J.—This action was instituted by respondent, as executrix of the last will and testament of Chauncey B. Treadwell, against appellants and the First State Bank of Bremerton to recover a deposit which had been made in the bank by respondent's decedent amounting at the time of the institution of the action to $926.96. It was stipulated at the trial that the money was the proceeds of separate property belonging to decedent, and not community property of himself and respondent.

After a trial to the court, among other things it found that the original amount was $1,060, but that certain sums had been expended after the money was deposited in the bank incident to the last illness of decedent, so that the amount then remaining in the bank was $841.96. For that sum, it directed recovery by respondent.

The trial court also made comprehensive findings of fact, among others that decedent was more than eighty years of age, and had been totally blind for more than sixteen years preceding his death on June 3, 1933; that he had been twice married; that appellant Henry A. Treadwell, who was about the age of fifty years, is the son of the first marriage; that, some thirty years ago, deceased married respondent, and by her had five sons, all now over the age of majority.

He made a finding that:

"At one time wealthy, deceased possessed at the time of his death but a modest amount of property. All of this property was in non-liquid form, with the exception of but one asset, consisting of some securities for which there was a market. Other than these liquid securities, the entire estate amounted to only about $5,000 or less. . . . The remainder of his property was of such a nature that, under existing financial conditions, there was practically no hope of converting any of it into cash."

In finding number four:

"The court finds that on the afternoon of May 27, at the time of signing the check, decedent was very weak physically, was unable to talk coherently, and was incompetent mentally to realize what he was doing in signing the check which took from him all the money he possessed; and that at such time he was so weak mentally and physically that he was susceptible of being easily influenced to do things he would not have done if physically and mentally normal, and that his action in signing the check was the result of undue influence exercised over him by the defendants Henry A. Treadwell and his wife, Wilda Treadwell."

Prior to May 27, 1933, referred to in the fourth finding above, on May 10, 1933, decedent, who had been living with his wife and family in Seattle, went to Bremerton for a visit with his son Henry and the latter's wife Wilda, these appellants. At that time, he was in bad physical condition, having hardening of the arteries, and was quite weak. A physician was then called in to attend him, who continued to treat him until May 20. During that ten-day period, the old man's condition became worse, and at times he had such suffering that an opiate was necessary to be administered to relieve his pain.

On May 15, he and Wilda Treadwell went to the bank and deposited the money in question, and, as the bank officer testified, he at first said that he desired to deposit it to the credit of Wilda, but they went away and had a conversation, and after returning, Mrs. Treadwell (Wilda) said put it in the name of Chauncey B. Treadwell. The deposit card was so made out and presented to Mr. Treadwell for his signature, and then he left instructions that the money was not to be withdrawn except in the presence of Wilda Treadwell and himself, both of them.

This testimony is uncontradicted, and it is obvious

that a completed gift was not made on May 15, 1933. If it was ever made, it was on May 27, after he had undergone the operation, and when, as the court found above, he had been irrational in the afternoon when appellants visited him and received the alleged check to consummate the gift.

We consider the first quoted finding unimportant, as it is immaterial whether decedent left a large fortune or not.

. The fourth finding is all-important, and is supported by substantial, direct, positive testimony of both expert and non-expert witnesses, as well as that of several disinterested witnesses who were in position to know the facts.

We may grant the contention of appellants that there is no substantial evidence whatever of undue influence upon their part exerted over decedent under the rules laid down by us in the following cases: *In re Patterson's Estate,* 68 Wash. 377, 123 Pac. 515; *In re Murphy's Estate,* 98 Wash. 548, 168 Pac. 175; *Barbee v. Barbee,* 134 Wash. 418, 235 Pac. 945; *Thomas v. Maring,* 144 Wash. 657, 258 Pac. 465; *In re Miller's Estate,* 146 Wash. 324, 262 Pac. 646.

We have also followed the principle that the same rules apply in testing the competency of the donor's or testator's mental competency and of undue influence in the making of gifts as in the execution of wills.. *Parr v. Campbell,* 109 Wash. 376, 186 Pac. 858; *In re Murphy's Estate, supra.*

The consensus of our decisions, in those and other cases that might be assembled, is that one has the legal right to dispose of his estate as he pleases without regard to the justice of his prejudices or the soundness of his reason therefor, if there is no defect in testamentary capacity and no undue influence or

fraud. *In re Murphy's Estate, supra,* and *Barbee v. Barbee, supra.*

A number of cases are cited and relied upon by appellants where the trial court found in favor of the mental competency of the donor or testator, as in the *Murphy* and *Barbee* cases, *supra,* and other cases, which are needless to discuss, because they do not fit this case. In this case, the trial judge found that the donor was mentally incompetent at the time the supposed gift was made complete, on May 27, 1933.

The case rests entirely upon that question of fact. The trial court heard the witnesses and found the facts against appellants. We have carefully read the record and the exhibits in the case, and we cannot say that the facts preponderate against the findings of the trial court so that we have the right to upset them.

The judgment is therefore affirmed.

BEALS, C. J., STEINERT, MITCHELL, and BLAKE, JJ., concur.