[No. 31791.  Department Two.  January 17, 1952.]

ALBERTINE VOSSEN, *Appellant*, v. FRANK C. WILSON *et al.*, *Respondents.*[1]

*James M. Ballard,* for appellant.

*Harper, MacDonald & Hoague,* for respondents.

HILL, J.—This is an action for cancellation of a deed, on the ground of undue influence exercised by the grantees upon the grantor. The trial court found in favor of the grantees and dismissed the complaint with prejudice, and the grantor appeals.

Mrs. Albertine Vossen, a widow, owned a duplex residence in Seattle consisting of an upstairs and a downstairs apartment. She lived in the upper apartment and had, for a period of sixteen years, rented the lower apartment to

[1]Reported in 239 P. (2d) 558.

Frank C. Wilson and Teresa Wilson, his wife. During that time their relationships were most cordial and there apparently was genuine affection on both sides, evidenced by many acts of kindness and helpfulness.

Mrs. Vossen had two sons, one living in Seattle, who was a paralytic and who had been given a house by his father; the other son, Werner, lived in California but visited with his mother at least once every year. Mrs. Vossen had expressed the view that, since the son living in Seattle had already received a home through his father, on her death Werner should receive the house in which she was living.

The rent the Wilsons were paying was quite low (forty dollars a month for property with a rental value of from sixty to seventy-five dollars). They had from time to time endeavored to buy the property, but Mrs. Vossen had not wanted to sell. The testimony of the Wilsons was that about a week prior to May 2, 1950, they reached an agreement with Mrs. Vossen whereby she agreed to sell them the place for six thousand dollars, with a fifty-dollar down payment, the balance to be paid at the rate of fifty dollars a month, with interest at five per cent on the unpaid balances, Mrs. Vossen to reserve the right to occupy the upstairs apartment as long as she lived. An additional consideration, as expressed in the agreement signed May 2, 1950, was the care and affection which the Wilsons had given her for sixteen years and which they agreed to give her during her lifetime. (Mrs. Vossen, however, was to "furnish her food and personal requirements.")

The testimony of the Wilsons is corroborated by three young lawyers, one of whom, employed by the Wilsons, consulted with Mrs. Vossen to ascertain her views and desires and prepared the agreement, deed and mortgage. He, with the other two, was present when the agreement was signed by Mrs. Vossen and the Wilsons, the deed was executed by Mrs. Vossen, and a mortgage to secure payment of the purchase price was executed by the Wilsons. The deed and mortgage were immediately filed for record by that lawyer.

The reasons for the presence of the other two lawyers when the documents were executed were that one had come to take the necessary acknowledgments (the lawyer who had prepared the documents not being a notary) and the other happened to be riding to his home with the one who took the acknowledgments. They are agreed that Mrs. Vossen read one copy of the agreement while the lawyer who had prepared it was reading it aloud, and that, when he read too fast, she slowed him down. They are agreed that the transaction was fully explained to her and they were all satisfied, from her comments, that she understood it and that it was what she wanted.

The lawyer who prepared the papers prepared a will for Mrs. Vossen which she executed a week later. There is also evidence that she told friends about the transaction and expressed her pleasure with it.

The trial judge, who observed Mrs. Vossen on the witness stand some eight months subsequent to the transaction complained of, was convinced of her competency and that she comprehended exactly what was being done. He did not believe her testimony that she fainted during the negotiations and did not know that she had signed the agreement and deed, and we feel that he was justified in disregarding it; the evidence to the contrary was overwhelming.

There was evidence, however, from which an inference could be drawn that the Wilsons were "using" Mrs. Vossen and capitalizing on her high regard and affection for them, such as: (a) an unsecured loan of $1,350 to enable them to buy an automobile, which loan they were repaying at twenty-five dollars a month; (b) the fact that she sold them property she had previously refused to sell and had intended to leave to her son Werner; (c) the inadequate consideration of six thousand dollars for a ten-thousand-five-hundred or eleven-thousand-dollar property, with only a fifty-dollar down payment and monthly payments of fifty dollars, that being only ten dollars more a month than the rent she had been receiving; and (d) the fact that, although the Wilsons had been asked to notify her friend and

business adviser, a Mr. Woolley, if Mrs. Vossen were to become ill or have any business transactions, they did not do so.

Although we have them in mind in our consideration of the case, we do not elaborate on other circumstances stressed in Mrs. Vossen's brief, such as that a month prior to the transaction she suffered an attack of influenza, which weakened her; that her hearing was somewhat impaired; and that shortly before the transaction she had told Mr. Wilson not to covet her property.

██ We have said that persuasion and solicitation do not constitute undue influence. We have also said:

"Influence becomes undue only when it overcomes the will of the grantor; when the grantor acts under such coercion that his own free agency is destroyed. The grantor's views may be radically changed by the influence exercised, but so long as he is not overborne and rendered incapable of acting upon his own motives, his acts are his own acts, not those of another." *Parr v. Campbell*, 109 Wash. 376, 381, 186 Pac. 858.

See, also, *Parris v. Benedict*, 28 Wn. (2d) 817, 184 P. (2d) 63.

██ If influence was exerted by the Wilsons on Mrs. Vossen, as might be justifiably inferred, it falls far short of being "undue influence," as we have defined it. We are satisfied, as was the trial court, that Mrs. Vossen was competent and understood what she was doing, and that at the time she signed the agreement and deed referred to she was acting upon her own motives and of her own free will and accord.

██ The transaction seems to us improvident or unduly generous, but it did not impoverish her or leave her financially dependent. She had a place to live, the payments from the Wilsons, and some other resources. Mere inadequacy of consideration is insufficient to raise a presumption of fraud or of undue influence. To raise such a presumption, the consideration must be so grossly inadequate as to shock the conscience of the court. *Tausick v. Tausick*, 52 Wash. 301, 311, 100 Pac. 757; *Hattie v. Potter*, 54 Wash. 170, 102 Pac.

1023; *Sova v. First Nat. Bank of Ferndale*, 18 Wn. (2d) 88, 107, 138 P. (2d) 181; *Ramsey v. Mading*, 36 Wn. (2d) 303, 217 P. (2d) 1041.

In the light of past kindnesses to her and assurance of future care, together with a life estate in the upstairs apartment, the trial court could not find, nor can we, such a failure of consideration as would raise a presumption of fraud or undue influence. The judgment is affirmed.

SCHWELLENBACH, C. J., HAMLEY, FINLEY, and OLSON, JJ., concur.