[No. 23159. Department One. September 3, 1931.]

CELINDA FOX, *Appellant,* v. ARCHIE FOX *et al., Respondents.*[1]

[1]Reported in 2 P. (2d) 642.

*U. D. Gnagey*, for appellant.
*Bixby & Neal*, for respondents.

PARKER, J.—The plaintiff, Celinda Fox, seeks a judgment canceling a written contract entered into between her and the defendants, Archie Fox and Mildred J. Fox, his wife; and also canceling a deed executed by her in pursuance of the terms of the contract, whereby she conveyed her thirty-acre farm in Whatcom county to the defendants. The plaintiff's claim for relief is rested upon alleged fraud on the part of the defendants, inducing her to execute the contract and deed. The cause, being of equitable cognizance, proceeded to trial upon the merits in the superior court for Whatcom county, resulting in findings and judgment denying to the plaintiff the relief prayed for, from which she has appealed to this court.

The controlling facts, we think, may be sufficiently summarized as follows: Appellant, Celinda Fox, was, on December 26, 1928, at the time of the execution of the contract and deed in question, a widow seventy-three years old. Respondent Archie Fox is her son, and was then thirty-two years old. He and respondent Mildred J. Fox have been married since several years prior to the execution of the contract and deed. At that time, appellant was living on her farm, the title having vested in her as her separate property upon the death of her husband, which occurred in January, 1928. Prior thereto, the farm was their community property, on which they had resided many years. Appellant has seven children, respondent Archie, three other sons and three daughters.

During the year 1928, respondents materially aided appellant in her support and the management of her farm. Appellant and respondents during that period were on the very best of terms. There was then a mortgage on the farm securing a principal indebtedness of seven hundred dollars, which had been executed by appellant and her husband before his death. The whole of this principal and a large amount of interest thereon remained unpaid. Foreclosure proceedings were commenced which threatened sale of the farm at forced sale. The accumulated unpaid interest and accrued costs of foreclosure made the total of the indebtedness secured by the mortgage approximately one thousand dollars. Another of the sons had an equity encumbrance on the farm to the extent of one hundred dollars. There were also unpaid taxes against the farm amounting to approximately ninety dollars, and there were also at that time some other unpaid obligations of appellant to be taken care of.

To save the farm from forced foreclosure sale, respondents purchased the mortgage, paying approximately one thousand dollars therefor. Respondents assumed and discharged his brother's claim, the taxes and other obligations aggregating, with the mortgage indebtedness, approximately thirteen hundred dollars.

The contract in question was signed and executed on the date it bears, reading as follows:

"THIS AGREEMENT made and entered into this 26th day of December, A. D. 1928, by and between Celinda Fox, a widow, residing in the County of Whatcom and State of Washington, party of the first part, and Archie Fox and Mildred J. Fox, husband and wife, of the County of Whatcom, State of Washington, parties of the second part,

"WITNESSETH: That whereas the said party of the first part is a widow, and has this day transferred by warranty deed to the parties of the second part, Archie

Fox and Mildred J. Fox, the following described premises, to-wit:

"The Northeast Quarter (NE¼) of the Southeast Quarter (SE¼) except the south ten (10) acres thereof, of Section Two (2), Township Thirty-nine (39) North of Range One (1) East of W. M., less road, containing about 28.95 acres, Whatcom County, Washington, said property being the sole and separate property of the said party of the first part, for the agreed sum of Twenty-six Hundred Dollars, being the full value thereof; Thirteen Hundred Dollars of which has this day been paid by the release of all mortgages, liens, claims and other evidences of indebtedness, and the balance of Thirteen Hundred Dollars to be evidenced by a real estate mortgage upon said premises, securing six promissory notes of even date herewith for Two Hundred Sixteen & 66/100 each, payable according to the terms thereof in from one to six years respectively, and bearing interest at the rate of five per cent per annum, payable annually.

"It is FURTHER MUTUALLY AGREED AND UNDERSTOOD BY AND BETWEEN the parties hereto that said notes shall be paid as follows, to-wit:

"That the said parties of the second part shall construct a house and home for the said party of the first part, said home to consist of a house, situated upon the premises above described and at a point to be mutually agreed upon, at a sum not to exceed Three Hundred Dollars ($300) in actual cost, said building to be completed and ready for occupancy on or before the 1st day of January, 1930.

"That the said parties of the second part shall furnish to said Celinda Fox, who is the mother of the said Archie Fox, all necessary food and provision; the same to be purchased wherever said parent may choose, and shall provide all necessary clothing for the said party of the first part, and furnish a physician or nurse and such medicine, as may be necessary for said Celinda Fox in case of sickness, and that the said Archie Fox will also pay to the said Celinda Fox, the sum of Twenty-five Dollars per year as spending money, and it is hereby agreed by and between the parties hereto that said food, provisions, doctor bills,

nurse bills, and care during sickness and the sum of $25 in cash so paid, shall be considered equivalent to the face value of each of the notes heretofore executed and secured by said mortgage, as the same matures, and that in case said food, provisions, clothing, doctor bills, nurse hire, care and attention and cash, is furnished as herein provided, each of said notes is to be surrendered and cancelled and considered fully paid at the time of its maturity.

"It is Furthermore Agreed by and between the parties hereto, that in case of the death of the said Archie Fox, or in case the said party of the first part becomes dissatisfied with the arrangement herein made, or at the election of the parties of the second part so to do, all of said notes may be paid in cash at once, and that this contract shall be considered satisfied and cancelled in full, and said mortgage shall be cancelled and all of said notes surrendered, and the said party of the first part shall have no further claim, either at law or in equity against said parties of the second part, or either of them.

"It is Further Agreed by and between the parties hereto that the said party of the first part will this day execute a will, which will is to be considered irrevocable in case the said Archie Fox survives the said Celinda Fox, and that under the terms of said will after providing for debts and funeral expenses, and a bequest of One Dollar to each of the other children of the said Celinda Fox, shall will, devise and bequeath unto the said Archie Fox, all of the remainder of her property, real, personal and mixed, wheresoever the same may be situated and located, and she hereby expressly contracts to make such will and in case that she should hereafter execute any other or further will, hereby expressly agrees in consideration of this contract to will all of her said property to the said Archie Fox after making the bequests and provisions hereinbefore set forth.

"It is Further Mutually Agreed and Understood by and between the parties hereto, that in case the said Celinda Fox shall die during the term of this contract the said parties of the second part shall provide her with a decent burial and erect a suitable tombstone

to her memory, and that the said parties of the second part shall pay all insurance premiums due upon the life insurance of the said Celinda Fox, and that said life insurance shall be and become part of the assets of said estate, and that in case it is necessary to change the beneficiary in said policy to effect the purpose herein set forth, the said Celinda Fox will have the said beneficiary changed at once to conform to the terms of this agreement.

"In Witness Whereof we have hereunto set our hands this 26th day of December, A. D. 1928.

"Celinda Fox
"Party of the first part
"Archie Fox
"Mildred J. Fox
"Parties of the second part."

The deed was accordingly executed by appellant and delivered to respondents. The mortgage and notes were accordingly executed by respondents and delivered to appellant. The contract being executed in duplicate, one was retained by appellant and one was retained by respondents.

The trial court found, among other things,

"That all of the parties to said contract continued in the performance thereof, all of them being satisfied therewith until on or about the 8th day of April, 1929, at which time two of plaintiff's daughters induced said Celinda Fox to become dissatisfied with said contract and induced said Celinda Fox to leave the home of said Archie and Mildred Fox and the home of said Celinda Fox upon the premises and removed the said Celinda Fox to their homes in Bellingham, Washington, where she has ever since remained. . . . That said contract has been fully carried out by the defendants, Archie Fox and Mildred Fox, in so far as the plaintiff has permitted them so to do; that the said Archie Fox has never refused to furnish her with proper support or made it disagreeable for her, and that the said plaintiff was not compelled by the said defendants in any manner to leave said home, and that her removal therefrom was under the express induce-

ment and suggestion of her daughters; that the con-
tract entered into between the plaintiff and defendants
was fair, just and equitable to all parties concerned,
and that neither duress, undue influence, menace or
fraud was used by any of the parties thereto in the
execution, delivery or performance thereof.''

The value of the farm was not in excess of $2,500.

█ Our reading of the evidence convinces us that
it very convincingly supports in all respects the facts
we have above summarized, including the above
quotations from the court's findings. It is argued
that, in view of appellant's age and lack of business
experience, and respondents' age and business experi-
ence, particularly that of the son Archie, respondents
had the burden of showing the fairness of the contract
and their freedom from overreaching, and that their
proof did not measure up to that requirement. We
may concede that such is the rule applicable to the
proper determination of this controversy, but never-
theless we think the evidence abundantly supports
the conclusion reached by the trial judge.

█ Some further argument is rested upon the
theory that the contract is inherently unjust and in-
equitable, in that it relieves the son Archie from all
obligation to support and care for appellant after the
expiration of six years. We do not think the contract
has any such effect. His obligation thereafter will be
exactly the same as it was before the contract was
made. It is enough to demonstrate that the contract
was fair, that respondents acquired nothing thereby
that they did not give and promise to give abundant
consideration therefor.

We note that appellant's estate, which she is likely
to leave at her death, will probably be of small value.
We also note that the evidence plainly shows that re-
spondent Archie has no intention of turning his

mother away at the expiration of six years, or leaving her then uncared for. Indeed, the evidence shows rather conclusively that he has, up to the present time, exercised more concern for his mother's welfare than any of her other children.

The judgment is affirmed.

TOLMAN, C. J., HOLCOMB, MITCHELL, and MAIN, JJ., concur.

