[No. 26537. Department Two. April 2, 1937.]

OREN L. McNALL et al., Appellants, v. MARY A. SMITH, Respondent.[1]

*Funkhouser & Twohy* and *N. D. Wernette,* for appellants.

*John King* and *F. L. Stotler,* for respondent.

BEALS, J.—Filo A. McNall, with his wife, settled on a homestead near Ewan, Whitman county, in 1882. There most of his children were born, and there Mrs. McNall died in 1924. His children having married and left home, Mr. McNall continued to live on the ranch until 1931, when he moved to Lakeview, Idaho. He died in 1934, having reached the age of eighty-one years.

Upon his removal to Lakeview, Mr. McNall made his home with his daughter Mary A. Smith, the defendant in this action, and remained an inmate of her home until his death. July 21, 1932, Mr. McNall and defendant called at the office of Mr. John King, an attorney of many years practice in Spokane, Mr. McNall

[1]Reported in 66 P. (2d) 316.

instructing Mr. King to prepare his will and also a deed conveying his ranch in Whitman county to defendant. These documents were prepared and executed by Mr. McNall on the following day. The deed was delivered and promptly recorded by Mr. King for the defendant. The real estate so conveyed was the most important portion of Mr. McNall's property, although he was possessed of other estate, including cash variously estimated at from five to eight thousand dollars.

During the fall of 1934, eight of Mr. McNall's children, being the plaintiffs in this action, instituted a proceeding in the state of Idaho, whereby they sought to have their father declared incompetent and a guardian appointed for him. Mr. McNall, while in attendance on the Idaho court, was taken sick and died, and the proceeding was, of course, dropped. Later, his will was probated in Spokane county, no objections to the will having ever been urged. All of Mr. McNall's children, except two sons, James and William, were beneficiaries under the will, and in due time the estate was distributed to the legatees therein named.

During the month of July, 1935, this action was commenced by eight of Mr. McNall's children against their sister Mary A. Smith, for the purpose of setting aside the deed above referred to, on the ground of the grantor's mental incompetency, and because of alleged undue influence exerted by defendant. Trial of the action to the court, sitting without a jury, resulted in a decree dismissing the action and quieting defendant's title to the property, from which decree plaintiffs have appealed.

Error is assigned upon rulings of the trial court excluding or refusing to consider certain testimony, upon the refusal of the trial court to grant the relief

demanded by appellants, and upon the dismissal of the action.

The action was tried upon the second amended complaint, the court holding that appellants derived the right to maintain the action through their father's will. As two of the appellants were not beneficiaries under this will, it was considered that they had no interest in the action, but they continued as parties plaintiff.

Four of the appellants testified as witnesses on the trial, one of them being William W. McNall, who was not a beneficiary under his father's will. The other four appellants did not testify. Practically all of the evidence introduced by appellants was given by the four appellants or members of their respective families, one brother of Filo McNall also testifying for appellants. Only two of the witnesses called by appellants were without the family circle, and of these, one testified merely to the purchase by Mr. McNall of some bank stock. One of these witnesses testified that, in his opinion, Mr. McNall was mentally competent; the other that, on one occasion, he seemed childish.

In the first place, appellants complain of rulings by the trial court to the effect that testimony offered and given by the appellants who testified concerning things which their father had said and done, which appellants contended tended to prove that he was mentally deficient, were not competent evidence under Rem. Rev. Stat., § 1211 [P. C. § 7722], prohibiting, in certain cases, a party to the record from testifying as to conversations or transactions with a deceased person. Some of the testimony offered was admitted by the trial court, and in other instances appellants' counsel made extensive offers of proof, which are in the record.

For the purposes of this opinion, we will assume, without deciding the question, that the evidence was improperly rejected. We consider the evidence which

was admitted, and which the trial court stated he would disregard, and we consider the offers of proof as though the witnesses in connection with whose testimony the offers were made had testified as counsel stated they would testify. We will also assume that the four appellants who testified would have stated that they were of the opinion that their father, at the time he executed the will and deed, was mentally incompetent.

The only other question presented is the sufficiency of the evidence to support the decree. The action is triable here *de novo,* and in addition, we are considering matters which the trial court did not consider.

It appears that, up to 1930, respondent saw no more of her father than did her brothers and sisters; indeed, she was not with him as much as some of them were. Respondent passed the winter of 1930 with her father on his farm, and although he requested her to continue living with him, she refused to do so; and apparently he thereupon suggested that he should become an inmate of her home at Lakeview. Clearly, at this time, Mr. McNall was possessed of ample means, more than sufficient to provide himself with reasonable comforts for a longer time than a man of his age could expect to live to enjoy them. Appellant Oren L. McNall lived at Lakeview, a short distance from respondent's home. Apparently, all the children were willing that respondent should take care of the father, and were content with the situation until they learned that he had conveyed his farm to respondent.

Appellants' evidence indicates that, at times, Mr. McNall failed to call his children by their correct names, and he sometimes apparently thought that one of his daughters was his deceased wife. The members of the family visited back and forth a great deal, and testimony introduced by appellants indicates that, at

times, respondent said that her father's mind had failed, that he could not be left alone, and that he had become like a child. On the other hand, eight or nine apparently disinterested witnesses, neighbors and friends of Mr. McNall, not related to the parties, testified on behalf of respondent that Mr. McNall was apparently mentally competent and capable of understanding and attending to his business affairs.

Dr. Charles P. Stackhouse testified that he was practicing medicine at Sand Point, Idaho, the doctor's qualifications being admitted by appellants. The witness testified that he was called to attend Mr. McNall October 17, 1934, when the latter was in Sand Point in attendance on the court because of the proceeding hereinabove referred to. Mr. McNall had suffered a severe chill, and the witness prescribed for him, sent him to the hotel, and later attended the sick man at the local hospital, to which he was soon removed. Mr. McNall's illness developed into bronchial pneumonia, and he died October 21st.

The witness testified that Mr. McNall's mind was perfectly clear until the evening before his death, when he became delirious. The witness stated that he asked Mr. McNall questions concerning his personal history, where he had been living, etc., to which Mr. McNall returned intelligent answers. He told the witness that he had been living with respondent, who had given him a very good home. He also said that he had given a piece of property to respondent, because she had taken good care of him. This matter came out in connection with the occasion for Mr. McNall's presence at Sand Point, the purpose of which Mr. McNall explained.

The doctor's testimony is convincing and apparently perfectly candid. It shows beyond question that, at the time the witness attended Mr. McNall, the latter was in possession of his normal faculties and understood not

only his present situation, but matters of past history which were important in connection therewith.

Mr. John King, who prepared Mr. McNall's will and also the deed here under attack, testified as to the circumstances under which these were prepared, and one cannot read his testimony without being convinced that at that time Mr. McNall enjoyed full testamentary capacity, and was mentally competent to convey his farm to respondent if he wished to do so.

True, Mr. McNall was an old man at the time he executed the deed. Several of his friends, who testified on behalf of respondent, admitted that sometimes he would repeat the same stories to the same people. Most old people and many much younger than Mr. McNall share this habit. At times, also, Mr. McNall would not place some members of his family, but the instances testified to are insufficient to indicate more than occasional lapses of memory. On the other hand, several disinterested witnesses testified that Mr. McNall had a strong will and was mentally alert, that he read a good deal, enjoyed looking over newspapers and magazines, discussed general subjects with his friends at Lakeview, and kept in touch with his business affairs.

Many authorities are cited in the briefs, but this is conspicuously a case which must be decided upon the facts.

After careful consideration of the evidence, and giving appellants the full benefit of all the testimony introduced or offered on their behalf, we are thoroughly convinced that appellants failed to make a case entitling them to the relief which they asked, and the decree appealed from is accordingly affirmed.

STEINERT, C. J., TOLMAN, HOLCOMB, and ROBINSON, JJ., concur.